STATE, *ex rel.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, a corporation, v. W. V. KNOTT, as Insurance Commissioner of the State.

167 So. 18.
Opinion Filed March 31, 1936.

*Hull, Landis & Whitehair* and *Francis P. Whitehair,* for Relator;

*Cary D. Landis,* Attorney General, *H. E. Carter* and *John L. Graham,* Assistants, and *Carl L. Owenby,* for Respondent.

BROWN, J.—The Legislature at its 1935 session adopted a workmen's compensation Act, Chapter 17481, Section 38 (a) provided that each employer shall secure the payment of compensation under the Act by insuring and keeping insured the payment of such compensation with any stock company or mutual company or association authorized to do business in the State; or by satisfactory proof to the "Industrial Commission," set up by the Act, "of his financial ability to pay such compensation and receiving an authorization for the Commission to pay such compensation directly." It is expressly provided that such Commission may, as a condition to such authorization, require such employer to deposit an indemnity bond or securities of a kind and in an amount determined by the Commission, and subject to such conditions as the Commission may prescribe, to procure prompt payment of compensation under the Act. An employer securing compensation in this way shall be known as "self insurer."

Subdivision (b) of the same section provides that the license of any company or association authorized to do an insurance business in this state may upon recommendation of the Commission be suspended, or revoked by the State Treasurer, for good cause shown after a hearing, at which the insurance company carrying insurance under the Act shall be entitled to be heard in person or by counsel. And

subdivision (c) of the same section provides that the Commission may suspend or revoke any authorization to a "self insurer" for good cause shown after a hearing.

The question involved in this case turns upon the proper interpretation of paragraph 1 of subsection (d) of said Section 38, which reads as follows:

"(d) 1. After ninety days from the day this Act becomes effective no carrier of insurance, including the parties to any mutual, reciprocal or other association, shall write any compensation insurance under this Act without a permit from the Insurance Commissioner. Such permit shall be given upon application therefor to any insurance or mutual or reciprocal insurance association *upon the said Commissioner being satisfied of the solvency of such Corporation or association and its ability to perform all its undertakings.* The said Commissioner shall have the right to revoke any permit so issued for violation of any provision of this Act." (Italics supplied.)

It will be observed that subsection (d) does not authorize the Insurance Commissioner as a condition precedent to the issuance of a permit, to require of the insurance company or association applying, the deposit of an indemnity bond or securities, as is expressly authorized to be required by the Commission of a self-insurer under a preceding paragraph of said Section 38.

It appears from the alternative writ in this case that the respondent Insurance Commissioner has *adopted a general rule or requirement,* as a condition precedent to the issuance of a permit under subsection (d) of Section 38, that all applicants for permits shall deposit with him either a surety bond or securities in the amount of $50,000.00 to guarantee fulfillment of all their obligations arising under the Workman's Compensation Act.

The relator in this case applied to the respondent for a permit to write compensation insurance as required by Section 38 (d) and in support of its application offered ample proof of its solvency and good financial standing, but the respondent refused to issue the permit. He did not dispute the solvency of the relator or its good financial standing, but based his refusal to issue the permit on the failure of the relator to comply with said rule or requirement just referred to.

The relator has applied to this court for, and the court has issued, an alternative writ of mandamus, the command of which is that the respondent as Insurance Commissioner shall forthwith investigate and satisfy himself as to whether or not relator is solvent and whether or not the relator has the ability to perform all its undertakings, without requiring the relator either to furnish the Commissioner with a bond in the sum of $50,000.00 in some surety company authorized to issue surety bonds in this state, or to deposit security satisfactory to the Commissioner in the amount of $50,000.00, and upon being thus satisfied that the relator is solvent and has the ability to preform all its undertakings, to issue the permit above referred to.

The relator contends that the respondent's requirement of the deposit of security or the giving of a bond is unreasonable and not justified by the statute.

Our view is that inasmuch as Section 38 in a preceding paragraph, expressly provides for the requirement of the deposit of security or the giving of a bond, in the case of an employer who is a self-insurer, and yet does not make any such requirement in sub-section (d) when a permit is applied for by an insurance company or association to write insurance under the Act, this omission is very significant. By expressly giving this authority in one instance

and omitting it in the other, it can hardly be said that the Legislature impliedly intended to confer the authority in the latter instance.

What the Act does require, and this is a matter of supreme importance, is that, befre issuing any permit to any insurance company or association to write compensation insurance under this Act, the Insurance Commissioner must first investigate each applicant and *satisfy* himself of (1) *its solvency* and (2nd) *its ability to perform all its undertakings*. This is far more important than the requiring of a deposit of $50,000.00 in securities or the giving of a surety bond in that amount, because conceivably a company's liabilities for insurance written under this Act might well amount to a far greater sum than that, and a bond or security in that amount might prove in some cases inadequate security. Furthermore, if an applicant is not solvent and able to perform its undertakings, admittedly this requirement, even if complied with, would not authorize issuance of a permit.

In this particular case, and in several others of a like nature which will be governed by the decision in this case, the Insurance Commissioner is not withholding the permit on account of any doubt whatever on his part as to the entire soundness and solvency of the association or corporation making the application. We gather from the briefs and arguments which have been made and filed that the adoption of this rule by the Insurance Commissioner has been prompted by his desire to protect those whose compensation under the Act may often be dependent upon the ability of the insurer to perform its undertakings. This purpose is rendered all the more important by the fact that in some instances under the Act the payment of compensation extends over a perid of five hundred weeks or nearly ten

years. But by omitting any requirement for the deposit of security or the giving of bond under the sub section (d) and by expressly requiring the Insurance Commissioner to pass *specifically* upon the solvency and ability of each applicant, the Legislature evidently thought that the latter requirement was best calculated to carry out the purpose of the Act. Our conclusion therefore is that if in any case the Insurance Commissioner is "satisfied of the solvency of such corporation or association and its ability to perform all its undertakings," he should issue the permit. If he is not so satisfied, he should refuse the permit.

In other words, our opinion is that the language of the statute does not expressly or impliedly authorize *the adoption of the general rule or requirement* which the Insurance Commissioner has adopted, as shown by the alternative writ in this case. And of course the laudable motive of the Insurance Commissioner which no doubt induced the adoption of this rule cannot supply the authority which the language of the statute does not vest in him, either expressly or by necessary implication. Merrill v. Jones, 106 U. S. 466, 27 L. Ed. 267.

The motion to quash the alternative writ is accordingly denied and the respondent allowed ten days to answer as he may be advised.

WHITFIELD, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.